**Gene H. GREER, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–17945.**

Court of Criminal Appeals of Oklahoma.

Jan. 4, 1974.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Linda E. Frye, Legal Intern, for appellee.

Murray Cohen, Oklahoma City, for appellant.

## OPINION

BLISS, Presiding Judge:

In the District Court, Oklahoma County, Case No. CRF–72–804, appellant, Gene H. Greer, hereinafter referred to as defendant, was charged, tried and convicted for the offense of Armed Robbery. His punishment was fixed at fifteen (15) years imprisonment. From said judgment and sentence, he has perfected a timely appeal to this Court.

Jimmy Delbert Logan testified he was Assistant Manager of Crown Heights Redbud located at 3726 North Western, Oklahoma City, Oklahoma. On November 29, 1971, at approximately 7:50 p. m., while he was stocking counters, a man wearing a wig and sunglasses walked into the store. He approached Logan in the aisle and asked, "Are you the one that's in charge here? . . . I have a check to cash." Logan responded that he was, and he and this person proceeded to the office to cash the check. Upon arriving at the office, Logan unlocked the cash drawer. The robber, while holding a gun concealed in his coat, handed Logan a paper bag and stated, "Put it all in there." Logan testified he removed approximately seven thousand eight hundred twenty-seven dollars and ninety cents ($7,827.90) from the safe and cash register located in the office. He placed it in the bag and delivered it to the robber. Logan positively identified the defendant as the person that perpetrated the above offense. Approximately four weeks following this incident, Logan testified that the defendant appeared in the store and inquired about a purchase of "pink lemonade." Logan stated that on this occasion he recognized defendant as the person who committed the above offense. Further, Logan stated that on this date defendant was driving a green El Dorado Cadillac.

Linda Kraker, employee of the above grocery, testified that during the evening of November 29, 1971, she was working at check stand No. 2 when she noticed a peculiar looking man wearing a plaid jacket, pink tinted wire-rimmed glasses, and a blonde frosted woman's wig, enter the store. Kraker testified she observed this man walk to the office with Mr. Logan where she assumed he was cashing his check. She next observed this man leaving the store carrying a brown paper sack in his left hand. Kraker positively identified defendant as the person she observed on this date. Kraker testified that on the following day, she identified defendant from a group of pictures presented to her by police. Finally, Kraker testified she saw defendant on four other occasions: twice in the store, once at a "rod and custom show", and once at her sister's apartment complex. She related that on these occasions she observed he was the person who committed the instant offense.

Robin Curran testified that on November 29, 1971, she was inside the above mentioned grocery. At approximately 8:00 p. m., while visiting with a friend who worked at this store, she observed a man enter wearing a wig and wire-rimmed glasses. Robin testified she observed the

defendant from a distance of approximately one and one-half feet and had an opportunity to observe his facial features very closely. She positively identified the defendant as the person who entered the store, clad in the unusual garb.

Bill Harrison testified that on November 30, 1971, he was employed as a detective for the Oklahoma City Police Department and assigned to investigate the above mentioned robbery. He interviewed Mr. Logan, Robin Curran, and Linda Kraker. During the course of the interview, he showed these witnesses several photographs, one of which was a photograph of the defendant. All three witnesses identified defendant as the person who committed the above offense. Harrison further testified he kept defendant under surveillance from November 30 until the charges were filed on April 3, 1972. On April 4, 1972, he obtained a warrant for the arrest of the defendant. Thereafter, he arrested the defendant at his residence for the offense of Robbery with Firearms. Harrison placed the defendant under arrest, advised him of his constitutional rights, handcuffed him, and transported him to the Oklahoma City Jail. While in Harrison's custody, in response to some of Harrison's questions, defendant denied committing the above offense.

Thereafter, the State rested.

Defendant, through numerous witnesses, including himself, presented a defense of alibi. The substance of that defense revealed that on the evening of the robbery he ate dinner with his mother's boyfriend, and that thereafter, he and his mother's boyfriend left his mother's residence, drove to a recreation center, and played pool. After playing pool, they returned to his mother's home and the defendant went to bed.

Defendant presented numerous witnesses, who testified as to his truth and veracity within the community.

As no questions regarding the propriety of rebuttal testimony were raised in defense counsel's briefs, we note eight rebuttal witnesses were presented by the State, which rebutted certain portions of the evidence presented by the defense.

Thereafter, the State and defense rested.

■ Defendant, first argues the evidence is insufficient to support a verdict of conviction, as the verdict is not bottomed upon "any competent evidence." We note the evidence is radically in conflict regarding defendant's possible presence in the store on the date of the robbery. Three eyewitnesses positively identified defendant as the perpetrator of the offense. The defendant's alibi witnesses established him to be in his mother's home at the time the robbery was committed. This Court has repeatedly held that where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts. See Beavers v. State, Okl.Cr., 450 P.2d 850 (1969). The aforementioned statement of facts clearly sets forth that the defendant, although disguised, was positively identified by three eyewitnesses. This Court has no authority to invade the province of the trier of facts and make a determination of defendant's guilt or innocence. For this reason we find this proposition to be completely without merit.

■ In arguing the evidence to be insufficient to sustain the jury's verdict, the defense counsel incidently argues the pretrial identification procedure used in the instant case tainted the in-court identification of the defendant with the consequence the trial court should have suppressed the identification evidence. In considering this question, we note the identification made by the three witnesses who observed the robbery was affirmatively stated to be made from their observations at the time the offense was committed. Their testimony is replete with declarations that they

were able to observe and identify defendant from his facial features and other characteristics and their identification was not predicated upon identification procedures used by police officers. The surrounding facts, circumstances, and particular details, which enable them to identify defendant, and the conditions surrounding the identification, support their declarations that the identification was made from observations made at the scene of the offense. We therefore find the identification of the defendant was sufficiently established by the evidence. See Davida v. United States, 422 F.2d 528 (10 Cir. 1970).

The judgment and sentence is affirmed.

BRETT and BUSSEY, JJ., concur.